FILED
2017 Mar-02  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TERRA ROXANNE GRIFFIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:15-CV-2308-VEH** |
| | ) |
| **NANCY A. BERRYHILL, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

---

## MEMORANDUM OPINION

Plaintiff Terra Roxanne Griffin ("Ms. Griffin") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who denied her application for Disability Insurance Benefits ("DIB").[2] Ms. Griffin timely pursued and exhausted her administrative remedies

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be

available before the Commissioner. The case is thus ripe for review under 42

U.S.C. § 405(g). For the following reasons, the Court **AFFIRMS** the

Commissioner's decision.

### STATEMENT OF THE CASE

Ms. Griffin was 46 years old at the time of her hearing before the

Administrative Law Judge ("ALJ"). *Compare* Tr. 41 *with* Tr. 131. She has completed

the tenth grade. Tr. 170. Her past work experience includes employment as a

secretary. Tr. 31. She claims she became disabled on February 3, 2012, due to her

multiple sclerosis ("MS") and depression. Tr. 169. Her last period of work ended on

February 3, 2012. *Id*.

On January 24, 2013, Ms. Griffin protectively filed a Title II application for a

period of disability and DIB. Tr. 21. On March 5, 2013, the Commissioner initially

denied these claims. *Id.* Ms. Griffin timely filed a written request for a hearing on

March 29, 2013. *Id.* The ALJ conducted a video hearing on the matter on May 19,

2014. *Id.* On June 5, 2014, he issued his opinion concluding Ms. Griffin was not

disabled and denying her benefits. Tr. 18-33. She timely petitioned the Appeals

Council to review the decision on June 20, 2014. Tr. 16-17. On November 5, 2015,

---

considered to refer to the appropriate parallel provision as context dictates. The same applies to
citations of statutes or regulations found in quoted court decisions.

the Appeals Council issued a denial of review on his/her claim. Tr. 1-7.

Ms. Griffin filed a Complaint with this Court on December 22, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on April 15, 2016. (Doc. 7). Ms. Griffin filed a supporting brief (doc. 10) on May 19, 2016, and the Commissioner responded with her own (doc.11) on June 28, 2016.

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, the ALJ's legal conclusions are reviewed de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the

Court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the Court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

5

After consideration of the entire record, the ALJ made the following findings:

1. Ms. Griffin met the insured status requirements of the Social Security Act through December 31, 2016.

2. She had not engaged in substantial gainful activity since February 3, 2012, the alleged disability onset date.

3. She had the following severe impairments: relapsing remitting multiple sclerosis; major depressive disorder; fatigue; and malaise (20 C.F.R. § 404.1520(c))

4. She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. She had the residual functioning capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except the claimant is able to sit for 30 minutes to 1 hour at a time and stand for 30 minutes to 1 hour at a time and thus must work in an environment where she is permitted to alternate between sitting and standing every 30 minutes to 1 hour as needed while remaining on task; the claimant is able to occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs but never ladders, ropes, or scaffolds; the claimant is able to

frequently handle and finger bilaterally; the claimant is able to understand, remember and carry out unskilled simple and repetitive tasks for 2 hours at a time with normal breaks, in an environment where changes are infrequent but when necessary are introduced gradually; the claimant is able to perform goal-oriented work rather than work that requires stringent production or fast pace; the claimant must avoid concentrated exposure to heat or work in sustained direct sunlight.

6.    She was unable to perform any past relevant work.

7.    She was born on [redacted], 1967 and was 44 years old, which is defined as a younger individual aged 18-49, on the alleged disability onset date.

8.    She has a limited education and is able to communicate in English.

9.    Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10.    Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.    Ms. Griffin has not been under a disability, as defined in the Social

Security Act, from February 3, 2012, through the date of this decision. Tr. 23-32.

DISCUSSION

The Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the Court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Griffin urges this Court to reverse the Commissioner's decision to deny her benefits on two grounds: (1) the ALJ failed to give proper weight to the opinion of Ms. Griffin's treating physician, Dr. Riser, and (2) the ALJ failed to otherwise rely on a medical source's opinion in determining Ms. Griffin's RFC. (Doc. 10 at 6-10).

**A.     The Weight Given to the Treating Physician's Opinion Was Supported by Substantial Evidence**

Ms. Griffin first agues that the ALJ failed to give proper weight to the

opinion of her treating physician, Emily S. Riser, M.D. ("Dr. Riser"). (Doc. 10 at 7-9). The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when

- the treating physician's opinion was not bolstered by the evidence,

- the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

   The Commissioner must specify what weight is given to a treating

physician's opinion and any reason for giving it no weight at all. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) and *Wiggins v. Schweiker*, 679 F.2d 1387, 1389-90 (11th Cir. 1982)).  Failure to do so is reversible error. *Id.* (citations omitted).

However, where the ALJ "articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and substantial evidence supports those reasons, we do not disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Commissioner of Social Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008)[4] (citing *Moore*, 405 F.3d at 1211). Good cause may exist to discount a treating physician's report "when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (finding good cause existed where the opinion was contradicted by other notes in the physician's own record)).[5] The ALJ may devalue the opinion of a treating physician where objective evidence contradicts the

---

[4]  In the Eleventh Circuit, unpublished decisions are not binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

[5]  Ms. Griffin acknowledges that an ALJ is "certainly entitled to decline to give controlling weight to a treating physician opinion for good cause." (Doc. 10 at 9).

physician's opinion. *Ellison v. Barnhart*, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam); *see also Wilson*, 284 F.3d at 1226 (finding the decision to discredit the subjective pain testimony of the claimant was substantiated by evidence that the testimony was inconsistent with the claimant's activities, condition, and limited use of medication).

In this case, the ALJ properly afforded little weight to the opinions of Ms. Griffin's treating neurologist, Dr. Riser. Tr. 30-31. Ms. Griffin was diagnosed with MS in January 2008. Tr. 28, 383. While MRIs taken in March and September of 2009 revealed lesions "located in a periventricular distribution involving the subcortical white matter" and "abnormal increased signal intensity in both hemispheres in the subcortical white matter distribution," no active lesions were identified. Tr. 28, 230, 237. Subsequent follow-up MRIs in August 2010, April 2011, October 2011, January 2012, and May 2012 revealed no significant changes compared to previous tests and no active lesions. Tr. 28-29, 240-44.

In addition to the stable MRI results, physical examinations conducted by Dr. Riser do not indicate physical limitations commensurate with the opinions she later provided. In an examination on March 29, 2012, Ms. Griffin reported fatigue and some memory loss; however, she had a normal sensory examination, no trouble breathing, a normal gait, normal muscle bulk and tone, and no abnormal

neurological testing. Tr. 28-29, 267-69. Subsequent physical examination findings from May 9, 2012, November 7, 2012, March 12, 2013, July 12, 2013, September 26, 2013, and February 20, 2014, remained largely unchanged other than noting Ms. Griffin's own complaints of fatigue, weakness, and occasional paresthesias. Tr. 270-74, 275-79, 304-308, 309-313, 314-318, 319-23. Additionally, on multiple occasions, Dr. Riser indicated that Ms. Griffin was doing well on her MS medication, Tysabri, and was experiencing no side effects, no relapses, and no limitations on mobility or self-care. Tr. 275, 278, 304, 307, 309, 312, 314, 317, 319.

However, despite the consistency and stability of her results and repeated findings that Ms. Griffin was experiencing no side effects from her medication, Dr. Riser opined in two Physical Capacities Evaluations ("PCE") on April 12, 2013, and March 14, 2014, that the drug side effects could "be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." Tr. 301, 328. In the April 2013 PCE, Dr. Riser noted that Ms. Griffin could only lift five pounds or less and that her pain and fatigue were "virtually incapacitating." Tr. 31, 299-303. In the March 2014 PCE, Dr. Riser similarly opined that she could only lift ten pounds or less; could sit for a total of one hour and stand or walk for a total of one hour in an eight-hour workday; could not push,

12

pull, climb, engage in gross or fine manipulation, bend, stoop, or reach; and had a

level of pain that would be "distracting" to work or daily activities. Tr. 30, 326-

330.

These findings are inconsistent with Dr. Riser's repeated findings that Ms.

Griffin was not experiencing side effects from her medication and was doing well.

Accordingly, the ALJ properly accorded little weight to these PCEs, which are not

substantiated by other medical evidence available in the record. *See Green v.

Social Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (finding that an

ALJ properly refused to credit a PCE from claimant's treating physician because it

was "contradicted by objective medical evidence").

Additionally, Ms. Griffin's subjective complaints alone are not sufficient to

support the vocational limitations in Dr. Riser's opinions. *See Crawford*, 363 F.3d

at 1159 (discounting the opinion of a treating physician when it was "inconsistent

with his own treatment notes, unsupported by the medical evidence, and appears to

be based primarily on [claimant's] subjective complaints of pain"); *Carter v.

Comm'r of Social Sec.*, No. 10-11192, 2011 WL 292255, at *4 (11th Cir. Feb. 1,

2011), citing *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (affording little

weight to opinions that are based on a claimant's subjective complaints and

inconsistent with medical records when they omit "any discussion of why the

claimant's diagnosed condition made it 'impossible for the claimant to be gainfully employed, or the true nature or permanence of the disability.'").

In sum, the ALJ articulated several reasons to give less weight to Dr. Riser's opinion, which he concluded was "inconsistent with the objective medical evidence, including her own treatment notes" and appears to be "based on the claimant's subjective complaints rather than objective findings." Tr. 31. The ALJ did not substitute his own judgment for that of Dr. Riser; instead, he determined that Dr. Riser's opinion was inconsistent with the medical evidence in the record. Accordingly, the ALJ did not commit any legal error in giving little weight to the opinion of Dr. Riser.

### B.  Substantial Evidence Supported the ALJ's RFC Assessment, and the ALJ Had no Further Duty To Develop the Record

Ms. Griffin also argues that the ALJ should have further developed the record by obtaining another Medical Source Statement ("MSS" or "MSO"), from either a medical expert or consultative examination, to support his RFC assessment. (Doc. 10 at 6-7, 9-10). Ms. Griffin states that "an MSO of some kind is crucial to the analysis of functioning based on the medically determinable impairments." *Id.* at 6. For the reasons stated below, Ms. Griffin's argument that there must be a medical source statement to support the ALJ's RFC assessment is

14

without merit.

First, Ms. Griffin acknowledges that there is no requirement that an ALJ rely on a MSS in determining a claimant's RFC. *Id.* at 6. Neither the Eleventh Circuit nor this Court has adopted a bright line test to determine whether the lack of a treating physician's MSS as to a claimant's functional ability calls for a remand. *Rose v. Astrue,* No. 11-CV-1186-VEH, slip op. at 17–18 (N.D. Ala. Nov. 1, 2011); *Eljack v. Astrue*, No. 2:11-CV-1854-VEH, 2012 WL 2476405, at *7-8 (N.D. Ala. June 22, 2012).

In some cases, a treating physician's MSS is necessary. *See, e.g.*, *Clemmons v. Astrue*, No.3:06-CV-1058-VEH, slip op. at 11-13 (N.D. Ala. June 11, 2007); *Coleman v. Barnhart,* 264 F. Supp. 2d 1007, 1010-11 (S.D. Ala. 2003). In others, it is not. *See, e.g., Green*, 223 F. App'x at 923-24 (holding that, even though the ALJ discounted a treating physician's opinion regarding claimant's functional abilities and limitations, there otherwise remained substantial evidence to find the claimant not disabled); *Moore*, 405 F.3d at 1212-13 (holding that lack of treating physician's medical opinion did not invalidate ALJ's RFC assessment because there was substantial evidence, outside the objective medical evidence, supporting such); *Eljack*, 2012 WL 2476405, at *8 (similar). In sum, the outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that

15

supports the ALJ's RFC determination, even in the absence of a MSS from the claimant's treating physician.

The ALJ's duty to develop the record can encompass an obligation to order a consultative examination "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). When the record does contain sufficient evidence to make an informed decision, the ALJ is not required to order a consultative examination. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (same). Sufficient evidence does not mean "absolute certainty" regarding a claimant's condition; the Social Security Act only requires substantial evidence. *Holladay*, 848 F.2d at 1210.

Similarly, the ALJ "may ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairment(s) could reasonably be expected to produce [her] alleged symptoms." 20 C.F.R. § 404.1529(b). However, because the determination of a claimant's RFC is not a medical assessment, an ALJ is not required to consider a medical expert opinion before making his RFC finding. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) (Guin, J.).

While the ALJ considers any doctor's opinions of record in assessing a

16

claimant's RFC, such opinions are different from an RFC assessment. *See* 20 C.F.R. §§ 404.1513(b)(c), 416.913(b)(c), 404.1527(b)(c), 416.927; SSR 96-5p, 1996 WL 374183. "A medical source statement is evidence that is submitted to [the Commissioner] by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairments(s)." SSR 96-5p; *see* 20 C.F.R. §§ 404.1545, 416.945, 404.1546(c), 416.946(c). Indeed, the RFC is an issue reserved for determination by the ALJ and, even when a medical source submits an opinion of a claimant's RFC, is it not entitled to special significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see* SSR 96-5p.

Based on the particular facts and circumstances of this case, the Court does not find that an RFC from a medical doctor, or further development of the record from a medical expert or consultative examination, was necessary to substantially support the ALJ's decision because there is ample medical evidence of record to support his assessment of Ms. Griffin's RFC. Tr. 27-31. He documented Ms. Griffin's medical history dating back to at least 2008 and extensively reviewed and discussed the progression of her condition through treatment and progress

17

notes her physicians submitted, including the results of diagnostic tests she underwent. *Id.* Moreover, the ALJ clearly set forth Ms. Griffin's abilities and limitations, upon which he relied in forming his assessment. Tr. 23-32. In fact, as above described, Ms. Griffin's own treating physician's opinions provide substantial evidence supporting the ALJ's decision. Ms. Griffin has failed to show that an additional consultation examination or medical source statement was required for the ALJ to make an informed decision about her limitations.

Substantial evidence specifically supported the ALJ's RFC determination that Ms. Griffin could sit or stand for thirty minutes to one hour at a time and perform other limited physical activities. He incorporated the standing and sitting limitations that Ms. Griffin described at her hearing into his RFC assessment. *Compare* Tr. 27 *with* Tr. 56 (describing her ability to stand in one spot for 20-30 minutes before sitting and her ability to sit for a "couple of hours.").

Additionally, the ALJ relied on Ms. Griffin's report about her daily activities. The ALJ limited Ms. Griffin's light work RFC by stating she could only "occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs" and could not climb "ladders, ropes, or scaffolds." Tr. 27. He also noted that she must "avoid concentrated exposure to heat or work in sustained direct sunlight." *Id.* This assessment correlates with Ms. Griffin's testimony at the ALJ hearing that

she could take her dogs out, load the dishwasher, and pick up her daughter from school if need be, but she had difficulty doing laundry due to the challenge presented by going up and down steps or cooking dinner due to the impact of the heat. Tr. 42-43. She later explained that "most MS patients don't tolerate heat well at all." Tr. 47. The ALJ took these limitations into consideration in forming his assessment.

Ms. Griffin also does also not challenge the testimony of the vocational expert that a person with the RFC found by the ALJ with Ms. Griffin's age, education, and skills could perform light work as found in jobs such as a mail clerk, office helper, or wire worker. Tr. 31-32. According to the vocational expert, work in these positions existed in significant numbers in the national economy. Tr. 32, 57.

Given the depth and clarity of the ALJ's considerations, there is substantial evidence that the ALJ fully and fairly developed the record in forming his RFC determination.

## CONCLUSION

Based upon the Court's evaluation of the evidence in the record and the parties' submissions, the Court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it.

Accordingly, the decision will be affirmed by separated order.

**DONE** this the 2nd day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge